IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TURON MCGEE,<br>           Plaintiff,<br><br>v.<br><br>GREGORY THOMAS, CAITLYN McLAUGHLIN, JASON McLEAN, JOEL TINSMAN, AUDREY DONALD, KIMBERLY BARKLEY, GEORGE KOONTZ, LEO DUNN, LINDA ROSENBERG, MARK KOCH, EVERETTE GILLISON, LESLIE GREY, MICHAEL POETTIGER, CRAIG McKAY, THEODORE JOHNSON, EDWIN BURKE, and JANE DOE (SCHULTZ),<br>           Defendants. | CIVIL ACTION<br><br><br>NO. 16-5501 |

## MEMORANDUM OPINION

Pro se plaintiff Turon McGee brings this civil rights case against various officials and employees of the Pennsylvania Board of Probation and Parole ("Board") related to his two parole revocations. He presses a panoply of claims under 42 U.S.C. § 1983 against seventeen Defendants, alleging that Defendants violated (and conspired to violate) various constitutional rights. The gist of his Complaint is that the Board abused its discretion in revoking his parole and that his parole officer mistreated him while Plaintiff was at a re-entry services center. Sixteen of the seventeen Defendants have moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the motions to dismiss shall be granted in part and denied in part.

I.      **BACKGROUND**[1]

Plaintiff, a convicted sex offender, violated his parole in late 2015. As a result, the Board decided to recommit him to Berks County Prison for six months.[2] While incarcerated, Plaintiff

---
[1] The following facts are taken from Plaintiff's Complaint and shall be taken as true for purposes of this motion.

filed an administrative appeal to seek relief from the Board's decision to recommit. However, in a letter signed by Kimberly Barkley, Secretary of the Board, Plaintiff's appeal was dismissed as untimely.

Plaintiff was released on parole in April 2016 and was sent to Coleman Hall, a center that offered re-entry services. According to the Plaintiff, the Board mistakenly sent him there due to a clerical error. Plaintiff informed his parole officer, Gregory Thomas, that he was not from the area around Coleman Hall, and that he had a job and family in Berks County. Although Plaintiff requested a transfer, it was denied.

While residing at Coleman Hall, Plaintiff claims that Thomas imposed unreasonable parole restrictions upon him. Thomas, for instance, required that Plaintiff enroll in a workforce program called GEO. According to Plaintiff, the GEO workforce program was inferior to and less lucrative than other workforce programs that he could have joined. Thomas also denied Plaintiff's requests to have leisure time away from Coleman Hall so that he could visit friends and family (such as Plaintiff's ailing mother). In response to these troubles at Coleman Hall, Plaintiff attempted to contact Thomas's supervisors, Caitlyn McLaughlin and Jason McLean. Neither responded.

Around mid-June 2016, a staff member at Coleman Hall reportedly overheard Plaintiff make a threat to a shift supervisor. The deputy operations manager of Coleman Hall, in turn, sent an email to McLean with documentation summarizing Plaintiff's infraction. Based on that email, Thomas arrested Plaintiff, who was discharged from Coleman Hall. Plaintiff attended a

---

[2] The Board is comprised of Leo Dunn, Edwin Burke, Everette Gillison, Leslie Grey, Theodore Johnson, Mark Koch, Michael Poettiger, Craig McKay, and Linda Rosenberg.

preliminary hearing, presided over by hearing examiner Schultz,[3] to determine whether there was probable cause that Plaintiff violated his parole by making the threat.

At the hearing, Thomas presented to the examiner the email sent to McLean. According to the email, the deputy operations manager of Coleman Hall learned, through another staff member, that Plaintiff made a threatening remark. Plaintiff objected to admission of the email because it was hearsay, but it was still determined that there was probable cause that Plaintiff violated his parole.

Plaintiff then requested a parole revocation hearing, which was presided over by Audrey Donald, a hearing examiner, and Linda Rosenberg, a member of the Board. At the parole revocation hearing, Thomas again introduced the email over the hearsay objection of Plaintiff, and McLean testified as to its contents. In light of the evidence, the Board ultimately concluded that Plaintiff violated his parole and that Plaintiff would be recommitted to prison for the violation. Plaintiff filed this action under 42 U.S.C. §§ 1983 and 1985, seeking damages and declaratory relief for various violations of his constitutional rights. All defendants except McLean have moved to dismiss Plaintiff's Second Amended Complaint for failure to state a claim.[4]

II.     **LEGAL STANDARD**

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint may not contain just "labels and conclusions," for "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In determining the

---

[3] No party has identified Schultz's first name.

[4] McLean was not served with the Complaint until December 19, 2017.

adequacy of a complaint, a court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to plaintiff." *Warren. Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011). Further, "[t]he obligation to liberally construe a *pro se* litigant's pleadings is well-established." *Higgs v. Attorney Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011).

Although a "court ruling on a motion to dismiss may not consider matters extraneous to the pleadings," documents that are "*integral to or explicitly relied* upon in the complaint" may be looked at during the 12(b)(6) stage without converting the motion to dismiss into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *see also In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Thus, because Plaintiff has attached various exhibits related to his parole proceedings in support of his civil rights claims, these documents may be considered.

### III. DISCUSSION

In asserting a Section 1983 claim, a plaintiff must plead that he was deprived of a federal constitutional or statutory right by a defendant acting under color of state law. *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005). Suing Defendants in their personal and official capacities, Plaintiff principally bases his Section 1983 claims on deprivation of due process and equal protection, violation of the Eighth Amendment's prohibition on cruel and unusual punishment, and unconstitutional false arrest. Defendants do not dispute that they were acting under color of state law during the relevant times.

#### a. Due Process Claims Against Defendants

Claiming violations of procedural due process, Plaintiff alleges that various Defendants are liable under Section 1983 for two reasons: (a) the sixteen Defendants improperly revoked his

parole by introducing and considering hearsay evidence at his parole revocation hearing; and (b) the Board failed to take a constitutional oath of office before revoking his parole.

The favorable termination rule bars all of Plaintiff's due process claims. Under the favorable termination rule, a Section 1983 claim may not be used to challenge "the fact or duration" of a plaintiff's confinement. *See Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). More specifically, "a harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable under Section 1983 unless that conviction or sentence was "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). If the success of Plaintiff's Section 1983 claim necessarily requires a finding regarding the "invalidity of the Parole Board's decision to revoke his parole," the claim fails. *Williams*, 453 F.3d at 177. Plaintiff's "sole federal remedy is a writ of habeas corpus," not a Section 1983 claim. *See id*.

First, Plaintiff's Section 1983 claim regarding the use of hearsay evidence fails because it would "necessarily demonstrate the invalidity of the Parole Board's decision to revoke his parole." *Id.* Plaintiff alleges that Defendants violated his due process rights by introducing and considering impermissible hearsay at his parole revocation hearing, which resulted in him being returned to jail. Plaintiff does not allege that the Board's decision has been favorably terminated or rendered invalid.[5] *See Curry v. Yachera*, 835 F.3d 373, 378-79 (3d Cir. 2016) (holding that plaintiff's failure to allege that his conviction was declared invalid warranted dismissal of his Section 1983 claim); *see also Brown v. City of Phila.*, 339 Fed. App'x 143, 145 (3d Cir. 2009)

---

[5] Indeed, Plaintiff acknowledges that he has filed grievances with agencies and a state court but has not received a decision as to the validity of the parole revocation yet.

(noting that a Section 1983 claim "based on an allegedly unconstitutional conviction or sentence does not accrue until the invalidation of that conviction or sentence."). Plaintiff's Section 1983 claim therefore improperly challenges the fact of his confinement based on allegedly defective parole revocation procedures, when the proper vehicle is a petition for writ of habeas corpus. *Williams*, 453 F.3d at 177; *see also Butterfield v. Bail*, 120 F.3d 1023, 1024 (9th Cir. 1997) ("Few things implicate the validity of continued confinement more directly than the allegedly improper denial of parole."). Accordingly, Plaintiff may not attack the introduction of hearsay evidence at his revocation hearing nor the decision to revoke his parole "via a § 1983 action." *See Williams*, 453 F.3d at 177.

Second, as to the Board's failure to take a constitutional oath of office, that claim shall also be dismissed under the favorable termination rule. Plaintiff claims that the Board violated his due process rights by failing to take such an oath that was "filed in the office of the Secretary of the Commonwealth" before revoking his parole for the second time. *See* 71 P.S. § 78. Plaintiff's due process claim again fails because it challenges the fact of his confinement and contends that the Board's alleged failure to take an oath deprives it of authority to revoke his parole. *See Williams*, 453 F.3d at 177.

All of Plaintiff's due process claims under Section 1983 regarding the parole revocation proceedings shall be denied without prejudice to refiling if his parole revocation is ultimately invalidated. *See Brown*, 339 Fed. App'x at 145-46 (3d Cir. 2009) (holding that a Section 1983 claim dismissed under the favorable termination rule should be done without prejudice). Plaintiff will not otherwise be given leave to amend these claims.[6]

---

[6] Plaintiff has also pressed an Equal Protection claim under Section 1983 against all seventeen Defendants. U.S. Const. amend. XIV, § 1. According to Plaintiff, he was subject to more stringent parole conditions than other parolees because of his status as a sex offender. Defendants have not challenged whether the claim is adequately pleaded. Neither have they raised an immunity defense. Accordingly, the claim remains in the Complaint.

6

### b. Remaining Claims Against Thomas

Plaintiff presses two additional types of Section 1983 claims against Thomas, his parole officer, asserting that Thomas is liable for (a) imposing cruel and unusual punishment upon him in violation of the Eighth Amendment; and (b) arresting him without probable cause.[7]

### i. Eighth Amendment Claim

Plaintiff's Section 1983 claim as predicated upon the Eighth Amendment fails because he does not plead a sufficiently serious deprivation. "The Eighth Amendment prohibits any punishment which violates civilized standards of humanity and decency." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). This is an objective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An Eighth Amendment claim here "requires an allegation that the prisoner has been denied 'basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety' from physical assault." *See Thomas v. Rosemeyer*, 199 Fed. App'x 195, 198 (3d Cir. 2006) (quoting *Griffin*, 112 F.3d at 709)).

Plaintiff fails to plead any denial of "life's necessities," such as "food, clothing, shelter, sanitation, medical care and personal safety." *Griffin*, 112 F.3d at 709. Instead, his allegations pertain to: (1) Thomas's refusal to transfer Plaintiff to a separate facility closer to home, where his family and friends reside; (2) Thomas's requirement that Plaintiff enroll in the GEO workforce program as opposed to a program of Plaintiff's choosing; and (3) Thomas's refusal to allow Plaintiff to spend time with his family, including Plaintiff's ailing mother. None of these alleged actions are legally sufficient to support an Eighth Amendment violation. *See id.*; *see also Johnson v. Mondrosch*, 586 Fed. App'x 871, 874 (3d Cir. 2014) ("Restrictions to a particular community, job, or home, as well as restrictions on travel or movement, are standard conditions

---

[7] Plaintiff also asserts a conspiracy claim under 42 U.S.C. § 1985(3) against Thomas, which has not been challenged by Thomas in his motion to dismiss.

of parole."). Plaintiff's Section 1983 claim premised upon Eighth Amendment violations shall therefore be dismissed with prejudice.

### ii. False Arrest Claim

Although styled as a procedural due process claim under Section 1983, Plaintiff's claim against Thomas for arresting him without probable cause shall be construed as a constitutional false arrest claim. *See Patzig v. O'Neil*, 577 F.2d 841, 848 (3d Cir. 1978). A false arrest claim requires an arrest made without probable cause. *Brown v. Makofka*, 644 Fed. App'x 139, 143 (3d Cir. 2016) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995)). "Probable cause exists if there is a 'fair probability' that the person committed the crime at issue." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000). The relevant inquiry for probable cause is not whether the person arrested actually committed the offense, "but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Groman*, 47 F.3d at 635 (internal quotation marks omitted). "[P]robable cause may rest upon hearsay, provided there exists 'a substantial basis for crediting the hearsay.'" *Torres v. City of Phila.*, 673 Fed App'x 233, 236 n.3 (3d Cir. 2016) (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)); *see also Gov't of V.I. in Interest of A.M.*, 34 F.3d 153, 161 (3d Cir. 1994) ("[I]t is constitutional to rely on hearsay to establish probable cause for an arrest.").[8]

Here, a review of the allegations of the Complaint and the relevant attached exhibits, suggests persuasively that Thomas had a substantial basis to credit the hearsay. Thomas relied on an email from his supervisor, McLean, which included an official form from the Pennsylvania

---

[8] Although parole officers in Pennsylvania can arrest parolees without a warrant for violations of their parole, the law is unclear as to "whether a parole officer must have probable cause to arrest a parolee for parole violations, or whether a less demanding standard applies." *See United States v. Noble*, 326 Fed. App'x 125, 127 (3d Cir. 2009). Thomas does not assert that a less demanding standard applies, but contends that he had probable cause for Plaintiff's arrest.

8

Department of Corrections titled Resident Infraction Report. According to the Report, an unidentified employee at Coleman Hall overheard Plaintiff make a threat towards a shift supervisor at Coleman Hall. The unidentified employee reported this to the deputy operations manager of Coleman Hall, who signed the Report on the same day Plaintiff made the threat. The Report includes the specific language used by Plaintiff in making the threat, as well as the particular date and time of the circumstances that led Plaintiff to make the threat. Although Thomas learned of Plaintiff's threat through at least two levels of hearsay,[9] the level of detail in the Report suggests that it is sufficiently reliable, which furnished Thomas probable cause to arrest Plaintiff. *Cf. United States v. Lloyd*, 566 F.3d 341, 345 (3d Cir. 2009) (holding that statements introduced at parole revocation hearing that contained layers of hearsay were unreliable because, among other things, they were unsworn and lacked detail). Plaintiff's unconstitutional false arrest claim shall therefore be dismissed with prejudice.

### c. Remaining Claims Against McLaughlin

Plaintiff asserts two supervisory liability claims under Section 1983 against McLaughlin, Thomas's parole supervisor. Plaintiff claims that McLaughlin is liable because she (a) permitted Thomas to falsely arrest Plaintiff upon his second parole violation and (b) ignored Plaintiff's requests for assistance regarding his treatment at Coleman Hall and by Thomas. Supervisors may be personally liable under a Section 1983 claim if they "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [their] subordinates' violations." *A.M. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

---

[9] The two levels of hearsay are (1) what the unidentified employee overheard and (2) what the unidentified employee informed the deputy operations manager.

Both supervisory liability claims shall be dismissed because Plaintiff has failed to plead the violation of an underlying constitutional right. As to Plaintiff's supervisory liability claim based on his false arrest, it shall be dismissed because, as noted above, there was probable cause to arrest Plaintiff. Thomas relied on credible hearsay in arresting Plaintiff. As with Plaintiff's unconstitutional false arrest claim against Thomas, Plaintiff's supervisory liability claim against McLaughlin shall be dismissed with prejudice. As to Plaintiff's supervisory liability claim based on McLaughlin's purported avoidance of his complaints about Thomas, Plaintiff has not identified any Eighth Amendment violation based on Thomas's conduct. Thus, McLaughlin could not have directed Thomas to violate Plaintiff's Eighth Amendment rights or otherwise participated in any Eighth Amendment violations. This claim shall also be dismissed with prejudice.

### d. Remaining Claim Against Tinsman

Plaintiff claims that Tinsman, Thomas's parole supervisor, should be liable under Section 1983 on a supervisory theory of liability for authorizing Plaintiff's false arrest. As with Plaintiff's claim against McLaughlin, the claim against Tinsman fails because Thomas, as supervisee, had probable cause to arrest Plaintiff. The claim shall therefore be dismissed with prejudice.

### e. Remaining Claim Against Donald, Rosenberg, Koch, and Schultz

Plaintiff asserts a Section 1983 claim against Donald, Rosenberg, Koch, and Schultz for various constitutional violations in their decision to revoke his parole. However, absolute

immunity and Eleventh Amendment immunity bar such a claim against them in their personal and official capacities, respectively.[10]

As to the claim against them in their personal capacity, "probation and parole officers are entitled to absolute immunity when they are engaged in adjudicatory duties." *Wilson v. Rackmill*, 878 F.2d 772, 775 (3d Cir. 1989). For a claim to be dismissed under the absolute immunity defense at the motion to dismiss stage, "the allegations of [the] complaint must indicate the existence of absolute immunity as an affirmative defense." *Id*. The defense "must clearly appear on the face of the complaint." *Id*.

On their face, Plaintiff's allegations against Donald, Rosenberg, Koch, and Schultz implicate adjudicatory duties. Donald and Schultz were Plaintiff's hearing examiners, and Rosenberg and Koch were members of the Board at the time of his second revocation. Plaintiff avers that they abused their discretion by revoking his parole twice. Any abuse of discretion would, thus, be related to their adjudicatory functions in deciding whether to revoke Plaintiff's parole. *See McGraw v. Wetzel*, 2016 WL 3538601, at *6 (E.D. Pa. June 29, 2016) ("[T]he Parole Board Defendant's refusal to grant parole is an adjudicatory function deserving of absolute immunity . . ."). Thus, absolute immunity bars Plaintiff's Section 1983 claim against these Defendants in their personal capacity.

Eleventh Amendment immunity, which provides that states are immune from suit by private parties in federal court, shields the Defendants here in their official capacities. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). "Individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity." *Betts v. New Castle Youth*

---

[10] Although the four Defendants here have not raised Eleventh Amendment immunity, this Court does so sua sponte due to the jurisdictional nature of the immunity. *See Sullivan v. Barnett*, 139 F.3d 158, 179 (3d Cir. 1998), *overruled on other grounds by Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999); *Bryant v. Allegheny Cty. Domestic Relations Section*, 2011 WL 5326051, at *2 n.2 (W.D. Pa. Nov. 3, 2011).

*Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010). The Eleventh Amendment protects a state and its state officials from a federal suit unless: (1) Congress has abrogated the state's immunity; (2) the state has waived its own immunity; or (3) the plaintiff sues against an individual state officer for prospective relief to end an ongoing violation of federal law. *See MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001).

None of these exceptions applies. First, Section 1983 does not abrogate a state's Eleventh Amendment immunity. *See Quern v. Jordan*, 440 U.S. 332, 340-41 (1979). Second, the Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity. *See Lavia v. Pa. Dep't of Corrections*, 224 F.3d 190, 195 (3d Cir. 2000); 42 Pa. Cons. Stat. Ann. § 8521(b). And third, Plaintiff does not seek prospective relief to end any ongoing violation of federal law in his complaint. Thus, Eleventh Amendment immunity bars Plaintiff's Section 1983 claims against Donald, Rosenberg, Koch, and Schultz in their official capacity.[11] *See Goodman v. McVey*, 428 Fed. App'x 125, 127 (3d Cir. 2011) (affirming dismissal of Section 1983 suit against Pennsylvania Board of Probation and Parole because of, among other things, Eleventh Amendment immunity); *Foster v. McLaughlin*, 203 F. Supp. 3d 483, 487-88 (E.D. Pa. 2016) (holding that Eleventh Amendment immunity barred Section 1983 claim against member of Pennsylvania Board of Probation and Parole). In sum, the Section 1983 claim against Donald, Rosenberg, Koch, and Schultz in their personal and official capacities shall be dismissed with prejudice.

---

[11] Plaintiff contends that Donald, Rosenberg, Koch, and Schultz are not entitled to Eleventh Amendment immunity because of their alleged failure to take a constitutional oath of office as required under 71 P.S. § 78. But the relevant factors for deciding whether Eleventh Amendment immunity applies do not turn on taking such an oath. *See Maliandi v. Montclair State Univ.*, 845 F.3d 77, 83 (3d Cir. 2016).

### f. Remaining Claim Against the Board

Lastly, Plaintiff claims that the Board members are liable as supervisors under Section 1983 for unlawfully revoking his first parole and abusing its discretion by not yet considering his pending administrative appeal for the second revocation of his parole.

Assuming without deciding that the Board members could be categorized as supervisors in this instance, Plaintiff's supervisory liability claim against them shall be dismissed without prejudice because he fails to "identify the specific supervisory practice or procedure that the supervisor[s] failed to employ."[12] *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001). In particular, Plaintiff fails to plead what protocol the members failed to follow in revoking his first parole or by abusing its discretion by not yet considering his administrative appeal. *See id*. Instead, Plaintiff merely pleads, in conclusory terms, that the Board was the "moving force" behind the alleged misconduct. This bare label is insufficient at the motion to dismiss stage. Plaintiff shall be given leave to amend to plead the requisite supervisory practice or procedure that the Board failed to use.[13]

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

**Date: 1/10/18**

**WENDY BEETLESTONE, J.**

---

[12] The elements of a supervisory claim require showing that "the existing custom and practice without the identified, absent custom or procedure, created an unreasonable risk of the ultimate injury"; "the supervisor was aware that this unreasonable risk existed"; "the supervisor was indifferent to the risk"; and "the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure." *Brown*, 269 F.3d at 216.

[13] Curiously, the Board members do not address whether qualified or absolute immunity shields them from lability for this claim. *See Williams*, 453 F.3d at 178; *Donaldson v. Mugavero*, 126 Fed. App'x 63, 65 (3d Cir. 2005).