## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TURON MCGEE,<br>　　　　　　　**Plaintiff,**<br><br>　　　v.<br><br>GREGORY THOMAS, et al.,<br>　　　　　　　**Defendants.** | CIVIL ACTION<br><br><br><br>NO.　16-5501 |

## <u>MEMORANDUM OPINION</u>

*Pro se* Plaintiff Turon McGee brings a variety of claims against parole officials involved with his parole revocation proceedings and his treatment while at a re-entry services facility. Specifically, McGee bring claims against Gregory Thomas, his former parole officer; Caitlyn McLaughlin, the parole officer's supervisor; Jason McLean, the contract facility coordinator for community correctional centers in Philadelphia; Audrey Donald, a parole hearing examiner; and, the members of the Pennsylvania Board of Parole, Leo Dunn, Linda Rosenberg, Mark Koch, Everett Gillison, Leslie Grey, Michael Poettiger, Craig McKay, Theodore Johnson, and Edward Burke (collectively, the "Board").

Plaintiff alleges that, after being released on parole to a halfway center, he faced undue restrictions based on his status as a sex offender; was retaliated against for filing grievances; had his parole improperly revoked based on hearsay and fabricated evidence; and has suffered injury based on the Board's delayed response to his parole appeals. Defendants now move to dismiss Plaintiff's Fourth Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motions to dismiss shall be granted in part and denied in part.

## I.    BACKGROUND

### A.  Facts

The factual background of Plaintiff's claims has been set forth previously, *see McGee v. Thomas*, 2018 WL 347578 (E.D. Pa. Jan. 10, 2018) ("2018 Opinion"), though the allegations in the Fourth Amended Complaint are somewhat altered from prior iterations.

Here, Plaintiff alleges that he was convicted of a sexual offense in Pennsylvania and released on parole. On October 30, 2015, Plaintiff was arrested for violating his parole. On December 24, 2015, the Board issued a decision mandating that Plaintiff return to prison for six months as a sanction. In February of 2016, Plaintiff filed an appeal. In April of 2016, the six-month sanction expired, and Plaintiff was again released on parole. This time, Plaintiff was sent to a re-entry services center, Coleman Hall. Plaintiff did not receive a response to his appeal until August of 2016, six months after he lodged the appeal, and four months after the sanction expired.

Between April and June of 2016, Plaintiff resided at Coleman Hall. While there, Plaintiff was denied opportunities to engage in any leisure or religious activities. Plaintiff avers that he asked his parole officer, Thomas, why he was not permitted to engage in programming, and was told that Thomas and McLaughlin (Thomas's supervisor) had made the decision to restrict Plaintiff's activities. Plaintiff avers that this decision was attributable to the fact that he is a sex offender.

During the two months that Plaintiff was at Coleman, Plaintiff filed numerous grievances, often about issues with Thomas, and attempted to directly contact McLaughlin and McLean, the facility coordinator, about issues with Thomas and the facility. On June 11, 2016, Plaintiff's mother contacted Coleman Hall to voice concerns that Plaintiff was receiving inadequate

medical treatment.  Forty-eight hours later, on June 13, 2016, Plaintiff was arrested by Thomas for his second parole violation.  On June 21, 2016, Plaintiff was notified that he was charged with violating his parole while at Coleman Hall by engaging in "behavior that was assaultive in nature."

A probable cause hearing was held on June 24, 2016.  At the hearing, Thomas produced an email sent from the operations manager at Coleman Hall to McLean.  The email attached an incident report, in which an unidentified staff member reported overhearing Plaintiff making threats.  Plaintiff alleges that this event was fabricated.  After McLean received the message with the incident report, he "replied to the email by authorizing an unsuccessful discharge."  At the parole revocation hearing, Plaintiff's counsel objected to the admission of the email and incident report as hearsay.

Plaintiff requested a full panel hearing, which was held on August 29, 2016.  Thomas, McLean, Donald and Rosenberg were present.  Plaintiff alleges that Thomas presented different evidence at this hearing than at the June 24, 2016 hearing.

On September 20, 2016, the Board issued a decision revoking Plaintiff's parole and recommitting Plaintiff to prison for six to nine months.  On October 4, 2016, Plaintiff filed an appeal.  He received a response to the appeal on July 5, 2017, nine months after his appeal was filed, and five months after he was released from his recommitment.

### B.  Procedural Posture

In October of 2016, Plaintiff filed this suit and was granted leave to proceed in forma pauperis.  ECF Nos. 1, 2, 3.  In November of 2016, Plaintiff filed an amended complaint.  ECF No. 4.  On November 21, 2016, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), the Court dismissed a portion of Plaintiff's amended complaint.  ECF No. 5.  Specifically, the Court dismissed (i) any

claims seeking release from imprisonment because such claims are properly raised in a habeas petition rather than a civil suit, and (ii) any claims asserted against unnamed parole hearing examiners and their supervisors, because such claims are barred by absolute immunity. *Id.* Defendants then moved to dismiss the remaining claims. ECF No. 26. On May 9, 2017, the Court granted Defendants' motion and dismissed Plaintiff's claims without prejudice, permitting him three months to file a second amended complaint. ECF No. 38.

On June 19, 2017, Plaintiff filed his second amended complaint, asserting a battery of Section 1983 claims against Thomas, McLaughlin, and the Board. ECF No. 44. Defendants moved to dismiss, which, on January 10, 2018, the Court granted in part and denied in part. As particularly relevant here, the Court dismissed without prejudice Plaintiff's Due Process claims regarding his 2016 parole revocation proceedings, finding them barred under the favorable termination rule because there were no allegations that the Board's revocation decision had been invalidated. *See Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (setting out rule). The Court ordered Plaintiff to file any third amended complaint by February 10, 2018, and periodic status updates regarding the termination of the Board's parole decision. ECF No. 94. The Court subsequently granted Plaintiff's motions to extend this deadline—first until April 10, 2018, then until May 10, 2018, and finally May 24, 2018. ECF Nos. 100, 103, 105.

Plaintiff filed his Third Amended Complaint on May 30, 2018. ECF No. 106. On June 20, 2018, Defendants again moved to dismiss. ECF No. 107. On September 14, 2018, the Court ordered Plaintiff to respond to the motion by October 10, 2018. ECF No. 108. On September 25, 2018, Plaintiff filed a memorandum that did not respond to the motion to dismiss, but instead indicated that the Board's decision revoking his parole had been invalidated in a September 13,

2018 decision from the Commonwealth Court.[1]  ECF No. 109.  Plaintiff subsequently made several filings, including another complaint that was nearly identical to the Third Amended Complaint.  ECF Nos. 110, 112, 113.  On November 9, 2018, the Court construed Plaintiff's most recent filing as a request to amend the complaint, and, so construed, granted the request and permitted Plaintiff until December 8, 2018 to file an amended complaint.  ECF No. 114.

On December 27, 2018, two and a half weeks after the deadline, Plaintiff filed his Fourth Amended Complaint.  ECF No. 115.  He raises four Section 1983 claims:

    (1)  Violation of Due Process, asserted against the Board for delayed responses in the parole appeal process.  Plaintiff seeks an injunction compelling the Board to respond to administrative appeals within 30 days;

    (2)  Violation of Equal Protection, asserted against the Board for a detaining sex offenders when they commit parole violations.  Plaintiff seeks an injunction precluding the Board from treating sex offenders differently from others seeking parole.  He further asserts that Thomas and McLaughlin violated Equal Protection by restricting Plaintiff's leisure and religious activities because of his sex offender status;

    (3)  Retaliation, asserted against Thomas, McLaughlin, and McLean,[2] for falsely accusing Plaintiff of making threats in the 2016 parole violation proceeding; and

    (4)  Violation of Due Process, asserted against the Board for revoking Plaintiff's parole based on hearsay evidence and failure to take the oath of office.

He asserts all claims against Defendants in their individual and official capacities.  In addition to the injunctive relief listed above, Plaintiff also seeks $270,000 in damages.

Defendants now move to dismiss.

## II.    LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

[1] The decision is available at *McGee v. Pennsylvania Bd. of Prob. & Parole*, 2018 WL 4354769, at *1 (Pa. Commw. Sept. 13, 2018).

[2] Though Plaintiff does not specifically name any defendants in this count, this claim is best construed as asserted against Thomas, McLaughlin, and McLean, since Plaintiff repeatedly alleges that they conspired to present this fabricated evidence at the hearing.

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting

*Twombly*, 550 U.S. at 556-57) (internal quotation marks omitted).  "In other words, a complaint

must do more than allege the plaintiff's entitlement to relief"; rather, "[a] complaint has to show

such an entitlement with its facts."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.

2009).  Thus courts must analyze a motion to dismiss by "(1) identifying those allegations that,

because they are no more than conclusions, are not entitled to any assumption of truth; and

(2) then determining whether the well-pleaded factual allegations plausibly give rise to an

entitlement to relief."  *Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60, 74 (3d Cir.

2011) (citing *Iqbal*, 556 U.S. at 679).   In evaluating a motion to dismiss, the court must

"construe the complaint in the light most favorable to plaintiff."  *Warren Gen. Hosp. v. Amgen,

Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).   Because Plaintiff proceeds *pro se*, the Court must liberally

construe his filings.  *Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010).

## III.    DISCUSSION

Defendants all assert that Plaintiff has inadequately pled his claims.  Separately, the

Board argues that Plaintiff's claims as against them are barred by absolute and Eleventh

Amendment immunity.  The Board's immunities limit the scope of Plaintiff's claims against the

Board—but does not bar each claim outright.  Plaintiff seeks different types of relief in

connection with different claims, which impacts the extent of the Board's immunities.

Specifically, the injunctive relief sought by Plaintiff in connection with certain claims implicates

the *Ex Parte Young* exception to Eleventh Amendment immunity.  Thus, the reach of the Board's

immunities is not coextensive across Plaintiff's various claims. Further, some of Plaintiff's claims are asserted against both the Board and other defendants who do not claim any immunity. Because the Board's immunities would not wholly preclude all of Plaintiff's claims, the Court first analyzes whether the claims have been adequately pled before proceeding to the Board's immunities.

Ultimately, each of the claims against the Board must be dismissed, due to a combination of inadequate pleading and the Board's immunities. However, the retaliation claim against Thomas, McLaughlin, and McLean has been adequately pled, and shall not be dismissed.

### A. Sufficiency of Allegations

#### i. *Counts One and Four: Due Process Claims against the Board*

Plaintiff presses two Due Process claims against the Board only: Count One, for undue delay in responding to appeals; and Count Four, for both using hearsay and failing to take the oath of office in connection with Plaintiff's parole proceedings.

Preliminarily, and importantly, the posture of this case has shifted appreciably since the 2018 Opinion. As noted, this Court previously found that Plaintiff's Due Process claims were barred by the favorable termination rule announced in *Heck v. Humphrey*, 512 U.S. 477 (1994). 2018 Opinion at *3; *see also Williams*, 453 F.3d at 177. Under the favorable termination rule,

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Heck*, 512 U.S. at 486-87. The Pennsylvania Commonwealth Court has since invalidated the revocation of Plaintiff's parole, holding that "the Board committed an error of law when it recommitted McGee . . . based solely on hearsay evidence that was admitted without a finding of

good cause." *McGee v. Pennsylvania Bd. of Prob. & Parole*, 2018 WL 4354769, at *4 (Pa.

Commw. Ct. Sept. 13, 2018). Accordingly, the parole revocation "has been reversed on direct

appeal," and the favorable termination rule no longer bars Plaintiff's Due Process claims. *Heck*,

512 U.S. at 486-87 (1994).

The Court understands both Count One and Count Four sound in procedural due process.

"To analyze a claim for procedural due process, a court must first determine whether the nature

of the interest is one within the contemplation of the 'liberty or property' language of the

Fourteenth Amendment." *Montanez v. Sec'y Pennsylvania Dep't of Corr.*, 773 F.3d 472, 482

(3d Cir. 2014) (internal quotation marks omitted). "If the court determines that the interest

asserted is protected by the Due Process Clause, the question then becomes what process is due

to protect it." *Id.* (internal quotation marks omitted).

### a. Protected Liberty Interest

Accordingly, the first question is whether Plaintiff's claims implicate a protected liberty

or property interest. "[T]he Constitution does not establish a liberty interest in [receiving] parole

that invokes due process protection." *Newman v. Beard*, 617 F.3d 775, 783 (3d Cir. 2010).

However, in *Morrissey v. Brewer*, 408 U.S. 471 (1972), the Supreme Court recognized a

parolee's liberty interest in remaining conditionally free after parole rather than returning to

prison:

> Though the State properly subjects him to many restrictions not applicable to
> other citizens, his condition is very different from that of confinement in a prison.
> He may have been on parole for a number of years and may be living a relatively
> normal life at the time he is faced with revocation. The parolee has relied on at
> least an implicit promise that parole will be revoked only if he fails to live up to
> the parole conditions. In many cases, the parolee faces lengthy incarceration if his
> parole is revoked.
>
> We see, therefore, that the liberty of a parolee, although indeterminate, includes
> many of the core values of unqualified liberty and its termination inflicts a

'grievous loss' on the parolee and often on others. [T]he liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process.

*Id.* at 482; *see also Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 9 (1979) ("[P]arole *release* and parole *revocation* are quite different.") (emphasis in original).

Subsequently, the Third Circuit somewhat cabined *Morrissey*'s reach in *Asquith v. Dep't of Corr.*, 186 F.3d 407 (3d Cir. 1999). There, the Court of Appeals concluded that an individual did not hold a cognizable Due Process Clause liberty interest in remaining at a New Jersey halfway house rather than being transferred back into prison. *Id.* at 410-11. The Court of Appeals reasoned that the halfway house imposed sufficient restrictions on the individual's freedom that his stay there "amount[ed] to institutional confinement" and, "while a prisoner remains in institutional confinement, the Due Process Clause does not protect his interest in remaining in a particular facility." *Id.* at 411. In reaching this conclusion, the Court of Appeals examined the particulars of daily life in the halfway house, concluding that the plaintiff was "strictly monitored":

> While at the facility, he was subject to a curfew and had to 'stand count' several times a day. He was also required to submit to urine monitoring and his room could be searched. Asquith could leave the house, but had to sign in and out, and his weekend passes were limited to two nights every seven days. [Volunteers of America] would monitor the time it took Asquith to travel to and from the halfway house, and he was required to take public transportation. While away, he was also required to check in by phone several times each day. If he could not be contacted within two hours, he would be deemed an escapee.

*Id.* at 411. In *Haley v. Kintock Grp.*, 587 F. App'x 1 (3d Cir. 2014), *as amended* (Oct. 7, 2014), a divided Third Circuit panel adhered to *Asquith* in an unpublished opinion, finding that a parolee did not have a protected liberty interest in remaining on parole in a halfway house, where conditions at the halfway house were as restrictive as those in *Asquith*, *id.* at 3.

The allegations in Plaintiff's Fourth Amended Complaint bring him closer in line with

*Morrissey* than *Asquith* and *Haley*. Plaintiff alleges that he was released on parole and residing at Coleman Hall, a "re-entry services center." While Plaintiff alleges that Thomas and McLaughlin unduly restricted his access to leisure and religious activities, his Fourth Amended Complaint is devoid of allegations suggesting that he was subject to the type of restrictions at issue in *Asquith* and *Haley* such as count, room searches, or urine analysis. True, he was living in a state facility, rather than at home. But there is no basis in the Fourth Amended Complaint from which to conclude that he was subject to additional restrictions. Accordingly, as a parolee released from prison and ostensibly free from the restrictions at issue in *Asquith* and *Haley*, Plaintiff held a liberty interest protected by the Due Process Clause under *Morrissey*.[3]

### b. *Procedural Sufficiency of Parole Proceedings*

Having found that Plaintiff possessed a protected liberty interest, "the question then becomes what process is due to protect it." *Newman*, 617 F.3d at 783. "[P]arole revocation proceedings do not require 'the full panoply of rights due a defendant in a criminal prosecution.'" *Smart, v. Admin. Office of the Courts State of New Jersey*, 672 F. App'x 182, 183 (3d Cir. 2017) (quoting *Morrissey*, 408 U.S. at 480) (internal brackets omitted). Nonetheless, certain minimum requirements must be met, which include:

> (a) [W]ritten notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

---

[3] Having concluded that Plaintiff held a protected liberty interest under the Due Process Clause, the Court does not analyze whether Plaintiff held a separate interest created by Pennsylvania law. *See Newman*, 617 F.3d at 783 ("The underlying liberty interest can be derived directly from the Due Process Clause or from the state's statutory scheme. . . . [In the absence of a constitutional liberty interest], if [the plaintiff] has a protected liberty interest in some aspect of his parole, it must derive from the Pennsylvania parole statute.").

*Morrissey*, 408 U.S. at 489. The revocation hearing must also "be tendered within a reasonable time after the parolee is taken into custody," though "a lapse of two months . . . would not appear to be unreasonable." *Id.* The Supreme Court has emphasized that its "precedents have sought to preserve the flexible, informal nature of the revocation hearing." *Black v. Romano*, 471 U.S. 606, 613 (1985).

In his two claims, Plaintiff argues that his parole revocation was procedurally insufficient for three separate reasons: in Count One, that the Board responded to his parole revocation appeals with undue delay, and in Count Four, that the Board failed to take the oath of office in Plaintiff's parole hearing and improperly relied exclusively on hearsay. Each is examined in turn: though the parole revocation and failure to take an oath do not amount to Due Process violations, the improper reliance on hearsay evidence is sufficient to state a claim.

First, the delays alleged by Plaintiff do not rise to the level of a Due Process violation. Plaintiff avers that he appealed both his parole revocations and that the Board responded to one after six months, and the other after nine. He also asserts in conclusory fashion that the Parole Board "has been drastically delaying responses to appeals," and seeks an injunction requiring that they respond within 30 days. The Supreme Court in *Morrissey* noted that a two-month delay in receiving a revocation *hearing* is generally permissible. 408 U.S. 488. Thus the six- and nine-month delays experienced by Plaintiff in receiving a response to his *appeal* would seem to comport with the timeline envisioned by the Supreme Court: if, consistent with Due Process, the hearing may be delayed up to two months, then surely the appeal process may take several more. Further, the Third Circuit has held, albeit in a nonprecedential opinion, that revocation of "pre-parole supervised release" did not mandate the availability of appellate review *at all* to comply with the Due Process Clause. *Smart*, 672 F. App'x at 183. The Court of Appeals reasoned that

"parole revocation proceedings do not require the full panoply of rights due a defendant in a criminal prosecution," given that "the Federal Constitution does not impose on the States an obligation to provide appellate judicial review *of even criminal convictions*." *Id.* (citing *Halbert v. Michigan*, 545 U.S. 605, 610 (2005)) (emphasis added). Applying the logic of these cases here compels the conclusion that the six- and nine-month delay in responding to Plaintiff's parole revocation proceedings does not amount to a Due Process violation. Accordingly, without diminishing the frustration occasioned by the delay—particularly since, in both parole revocation proceedings, Plaintiff served his full sanction and was released before receiving the response to his appeals—Plaintiff's Due Process claim against the Board for delay in responding to appeals must be dismissed.

As to the Board's failure to take an oath of office, this too fails. The Supreme Court has emphasized "the flexible, informal nature of the revocation hearing," *Black*, 471 U.S. at 613, and, in *Morrissey* specifically stated that parole proceedings must be administered by "a neutral and detached hearing body such as a traditional parole board, *members of which need not be judicial officers or lawyers*," 408 U.S. at 489. Thus, by asserting only that the Board did not take to take an oath of office in connection with his revocation proceedings, Plaintiff does not state a due process violation.

This leaves Plaintiff's assertion that his parole was improperly revoked solely on the basis of hearsay evidence. *Morrissey* provides that parolees facing revocation must be afforded "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." 408 U.S. 488. In the context of federal parolees, the Third Circuit, along with most of the Courts of Appeals, "ha[s] interpreted *Morrissey* and [Federal] Rule [of Criminal Procedure] 32.1(b) to require a balancing test . . .

consider[ing] both the reliability of proffered hearsay and the cause why a witness is not produced." *United States v. Lloyd*, 566 F.3d 341, 344 (3d Cir. 2009). Though *Lloyd* concerned federal parolees and partially turned on the application of a federal rule, courts have generally applied *Morrissey* to require this same balancing test in state parole proceedings as well. *See, e.g.*, *Valdivia v. Schwarzenegger*, 599 F.3d 984, 992 (9th Cir. 2010) (applying *Morrissey* to find that California was required to undertake balancing analysis and "provide good cause for the absence of the declarant in the underlying hearsay statement that it seeks to use as an indicia of reliability"). Thus the obligation to conduct a balancing analysis before relying on hearsay in parole proceedings applies to the Board.

Plaintiff alleges that the only evidence that was presented at his second parole hearing was hearsay, in the form of an email from the operations managers of Coleman Hall with a fabricated incident report attached, describing an unidentified staff member who allegedly heard Plaintiff making threats. Plaintiff also avers that his counsel objected to the consideration of this hearsay. There is no indication in the Fourth Amended Complaint that the Board undertook the required balancing. More damning still, the Pennsylvania Commonwealth Court, in overturning Plaintiff's parole revocation, found that, at the hearing, "McGee was found to be a [technical parole violator] based solely on hearsay evidence that was admitted over objection *without a finding of good cause*." *McGee*, 2018 WL 4354769, at *4 (emphasis added).[4] Because, if proven, this process fell below the minimum requirements of Due Process as articulated in *Morrissey*, Plaintiff has adequately alleged a Due Process claim.

*      *      *

Accordingly, Count One—violation of Due Process for failure to timely respond to

---

[4] As a public record that is referenced in the Fourth Amended Complaint, the Commonwealth Court's decision may properly be considered at the motion to dismiss stage. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

appeals—must be dismissed for failure to state a claim. Count Four must be dismissed to the extent that is asserts a Due Process violation based on the Board's failure to take an oath. However, Count Four is sufficiently alleged to the extent that it asserts a claim for impermissible reliance on hearsay evidence.

### ii. Count Two: Equal Protection Claims Disparate Treatment of Sex Offenders against the Board, Thomas, and McLaughlin

In support of his Equal Protection claim, Plaintiff alleges that the Board has a "custom of detaining 'sex offenders' [in prison] for alleged technical parole violations," when "[m]ost other parolees are placed in halfway houses" or other similar facilities. He supports this assertion by reference to two other parolees, whose underlying convictions were not for sex crimes, and who received lesser sanctions than he did when they were found to have violated their parole. Plaintiff also asserts that Thomas and McLaughlin restricted his leisure and religious activities because he is a sex offender, alleging that "all other offenders under parole supervision except those with sex offenses . . . were allowed to engage in leisure and religious activities."

Under the Fourteenth Amendment, no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" *Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985)). "The level of scrutiny applied to ensure that classifications comply with this guarantee differs depending on the nature of the classification." *Id.* "Classifications involving suspect or quasi-suspect class, or impacting certain fundamental constitutional rights, are subject to heightened scrutiny." *Id.* Suspect classes subject to heightened scrutiny include race, alienage, national origin, and sex. *Id.* (citing *Cleburne*, 473 U.S. at 439). Where neither a suspect class nor

fundamental right is implicated, the classification "need only be rationally related to a legitimate government goal." *Id.* Where such rational basis review applies, "the classification is presumed constitutional," and the burden is on the party attacking the classification to negate "every conceivable basis which might support it." *Armour v. City of Indianapolis, Ind.*, 566 U.S. 673, 681 (2012).

Plaintiff asserts that Defendants violated the Equal Protection Clause by treating him differently based on his status as a sex offender. "[A] classification based on an individual's status as a sex offender is not a suspect or quasi-suspect class and does not implicate a fundamental right warranting heightened scrutiny." *Stradford v. Wetzel*, 2017 WL 1196656, at *4 (E.D. Pa. Mar. 31, 2017); *see also Artway*, 81 F.3d at 1267 ("The challenged category— 'repetitive and compulsive sex offenders'—is not a suspect or quasi-suspect class."). As a result, rational basis review applies.

In its motion to dismiss, the Board asserts that disparate treatment based on an individual's status as a sex offender serves the Pennsylvania parole system's overarching goal of promoting public safety. Courts have routinely upheld classifications based on sex offender status against Equal Protection challenges, finding them rationally related to safety and other legitimate goals. *See, e.g.*, *Stradford v. Wetzel*, 2017 WL 1196656, at *4 (E.D. Pa. Mar. 31, 2017); *Roe v. Marcotte*, 193 F.3d 72, 82 (2d Cir. 1999); *cf. Artway*, 81 F.3d at 1267-68 ("Protecting vulnerable individuals from sexual offenses is certainly a legitimate state interest. Requiring registration of convicted sex offenders found to be 'repetitive and compulsive,' as opposed to other sex offenders or the rest of the population, is rationally related to that goal."); *Doe v. Pennsylvania Bd. of Prob. & Parole*, 513 F.3d 95, 108 (3d Cir. 2008) (disparate treatment of in-state versus out-of-state sex offender parolees was not rationally related to security

concerns).  Plaintiff provides no basis to conclude that these oft-accepted justifications do not apply here—that is, he does not contest that safety is a legitimate goal, nor does he argue that the classification is not rationally related to that interest.  Nor does Plaintiff include allegations in his Fourth Amended Complaint supporting any assertion that the classifications are otherwise irrational.  Accordingly, the Equal Protection claim does not survive the motion to dismiss.

### iii.   Count Three: Retaliation against Thomas, McLaughlin, and McLean

Plaintiff alleges that Thomas, McLaughlin, and McLean retaliated against him by conspiring to present falsified evidence in his parole revocation hearing.  In order to state a First Amendment retaliation claim, a plaintiff must allege: (1) that the conduct leading to the alleged retaliation was constitutionally protected; (2) that the plaintiff suffered an adverse action sufficient to deter a person of ordinary firmness from exercising her constitutional rights; and (3) that her protected conduct was a substantial or motivating factor in the adverse action.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

As to the first prong, inmates engage in protected conduct by filing grievances or complaints, *see, e.g.*, *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003), and at least one other court has held that parolees housed at specifically Coleman Hall also engage in constitutionally protected conduct by filing grievances, *see, e.g.*, *Carter v. Morrison*, 2010 WL 701799, at *11 (E.D. Pa. Feb. 24, 2010), *aff'd sub nom. Carter v. Morrisson*, 429 F. App'x 114 (3d Cir. 2011).  Accordingly, here, Plaintiff has adequate alleged that he engaged in protected conduct by filing grievances.[5]

---

[5] Defendants assert that Plaintiff failed to state a claim of First Amendment retaliation because he does not allege that his grievance touched on a matter of public concern.  This misconceives the inquiry.  The first prong of the retaliation requires that a plaintiff have engaged in constitutionally protected conduct.  Speaking on matters of public concern is conduct protected by the First Amendment, *see, e.g.*, *Snyder v. Phelps*, 562 U.S. 443, 451 (2011)—but it is hardly the *only* protected conduct.  Constitutional protection for grievances against correctional officials is well established.  *See, e.g.*, *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 299 (3d Cir. 2016).

As to the second prong, an inmate plaintiff suffers an adverse action when officers present fabricated evidence of misconduct or safety risks in order to transfer the plaintiff to a more restricted status within the prison. *See, e.g.*, *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (misconduct); *Burns v. Martuscello*, 890 F.3d 77, 82, 94 (2d Cir. 2018) (safety risk). Similarly, here, Plaintiff has sufficiently alleged an adverse action by asserting that false, fabricated evidence of Plaintiff making threats was presented in his parole revocation proceeding, and prompted his removal from Coleman Hall to a prison.

Finally, as to the third prong, plaintiffs may show a sufficient causal connection between the protected conduct and the adverse action through "timing plus other evidence." *Pepe v. Lamas*, 679 F. App'x 173, 175 (3d Cir. 2017); *see also Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000). Here, Plaintiff asserts that, during his relatively brief tenure at Coleman Hall, he complained in numerous fora about Thomas, attempted to complain to McLaughlin and McLean to voice additional concerns about Thomas, and that his mother contacted Coleman to raise issues about Plaintiff's medical care; that Thomas and McLaughlin decided to restrict his leisure and religious activities; that McLean received an email with a falsified incident report; that the incident report stated only that an unknown Coleman Hall staff member had heard Plaintiff make threats, which Plaintiff avers is false; that, on the basis of this false evidence, McLaughlin and McLean authorized Thomas to arrest Plaintiff and initiate parole revocation proceedings; that Thomas and McLean then presented this false evidence in parole revocation proceedings; that, from the first to the second parole revocation hearings, Thomas altered his account of how exactly Plaintiff violated his parole; and that, as a result of these proceedings, Plaintiff's parole was revoked. Such allegations are sufficient to state causation at this stage. *See Pepe*, 679 F. App'x at 175 (holding that allegations that inmate was "denied

employment by the same official against whom he had filed a grievance a month prior—and that he received conflicting responses from other prison officials regarding his ability to be reinstated into his kitchen job, were sufficient at the Rule 12(b)(6) stage to plausibly raise an inference of causation between the protected conduct and the adverse action.").

Defendants assert that Plaintiff does not state a claim against McLaughlin because his allegations do not sufficiently indicate her direct involvement, and instead are impermissibly reliant on respondeat superior. While "[a] plaintiff cannot predicate liability on her § 1983 claims on a respondeat superior basis," the Third Circuit has recognized "two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (internal quotation marks omitted).

While the allegations against McLaughlin are thin as compared to Thomas and McLean, Plaintiff nonetheless asserts that McLaughlin served as Thomas's supervisor; that Plaintiff was told that McLaughlin made the decision to restrict Plaintiff's leisure and religious activities; that Plaintiff attempted to contact McLaughlin about his issues with Thomas; and that McLaughlin authorized Plaintiff's arrest on the basis of a false report from an unnamed staff member. Taking these allegations in the light most favorable to Plaintiff, they indicate that McLaughlin was keenly aware of Plaintiff's quarrel with Thomas, put Plaintiff on a restricted status, and authorized his arrest on the basis of thin evidence in retaliation. These allegations are at least sufficient to allege that McLaughlin "had knowledge of and acquiesced in [her] subordinates'

violations." *Id.* Accordingly, at this early stage, the retaliation claim shall not be dismissed as against McLaughlin.

Accordingly, Plaintiff has included sufficient allegations to state a claim for retaliation against Thomas, McLaughlin, and McLean.[6]

\* \* \*

For the reasons given, Plaintiff has adequately alleged a portion of Count Four, a Due Process claim against the Board for using hearsay in his 2016 parole revocation proceedings. He has also adequately alleged Count Three, a First Amendment retaliation claim against Thomas, McLaughlin, and McLean. The remainder of his claims have not been adequately alleged, and, accordingly, shall be dismissed.

### B. The Board's Absolute and Eleventh Amendment Immunity

#### i. *Application to Remaining Viable Claim*

As stated, Plaintiff has alleged only one viable claim against the Board: Count Four, for a Due Process violation based on the use of hearsay in his parole revocation proceedings. Plaintiff seeks only damages in connection with this claim. Though it is sufficiently alleged, it is nonetheless barred by the Board's absolute and Eleventh Amendment immunity.

---

[6] Liberally construed, Plaintiff also raises a conspiracy claim against Thomas, McLaughlin, and McLean in connection with Count Three. To make out a conspiracy claim under § 1983, Perano must show that "persons acting under color of state law conspired to deprive him of a federally protected right." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999) *superseded by statute on other grounds as recognized by P.P. v. West Chester Area Sch. Dist.*, 585 F.3d 727 (3d Cir. 2009). To properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred. *D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992). The facts alleged by Plaintiff in support of the retaliation claim are sufficient to support a conspiracy claim because, interpreted in the light most favorable to Plaintiff, they tend to show that Thomas, McLaughlin, and McLean worked together to arrest Plaintiff and present falsified evidence at Plaintiff's revocation hearing in order to remove him from Coleman Hall. *Cf. Ashton v. City of Uniontown*, 459 F. App'x 185, 190–91 (3d Cir. 2012) (conspiracy inadequately alleged where complaint was "devoid of any factual allegation showing an agreement of concerted activity" by state actors, where meter maid allegedly accosted plaintiff, plaintiff subsequently complained to mayor's office, and asserted that meter maid and mayor conspired to violate his rights). Accordingly, to the extent that Plaintiff presses this claim, it survives dismissal.

To the extent that Plaintiff asserts this claim against the Board in their individual capacities, as this Court has twice explained in this litigation, "probation and parole officers are entitled to absolute immunity when they are engaged in adjudicatory duties." *Wilson v. Rackmill*, 878 F.2d 772, 775 (3d Cir. 1989); *see also* ECF Nos. 5, 93. A parole board's decision to revoke parole is part of its adjudicatory duty. *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) ("[P]arole board officials, like judges, are entitled to absolute immunity from suit for damages when they serve a quasi-adjudicative function in deciding whether to grant, deny or revoke parole."); *see also McGraw v. Wetzel*, 2016 WL 3538601, at *6 (E.D. Pa. June 29, 2016) ("[T]he Parole Board Defendant's refusal to grant parole is an adjudicatory function deserving of absolute immunity . . ."). "In order for the defendants to succeed on a Rule 12(b)(6) dismissal based on absolute immunity, the allegations of appellant's complaint must indicate the existence of absolute immunity as an affirmative defense; the defense must clearly appear on the face of the complaint." *Wilson*, 878 F.2d at 776.

The viable portion of Count Four is based on allegations that the Board improperly revoked Plaintiff's parole by relying on hearsay evidence. But the Board's decision to revoke Plaintiff's parole is plainly an adjudicatory duty. *See Montero*, 171 F.3d at 761; *McGraw*, 2016 WL 3538601, at *6. Accordingly, absolute immunity is apparent from the face of the Fourth Amended Complaint, and bars this claim to the extent it is asserted against the Board in their individual capacities.

To the extent that Plaintiff asserts this claim against the Board in their official capacities, as this Court explained in dismissing the Second Amended Complaint, Eleventh Amendment immunity attaches. *See Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008); *see also J. C. v. Ford*, 674 F. App'x 230, 232 (3d Cir. 2016) ("[T]he Philadelphia

Adult Probation and Parole Department and its employees acting in their official capacity are entitled to immunity from damages suits."); 2018 Opinion at *6.  Eleventh Amendment protects a state and its state officials from a federal suit unless: (1) Congress has abrogated the state's immunity; (2) the state has waived its own immunity; or (3) the plaintiff sues against an individual state officer for prospective relief to end an ongoing violation of federal law.  *See MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001).  As this Court previously found, none of these exceptions applies, since Congress has not abrogated nor has Pennsylvania waived immunity, and Plaintiff seeks only damages in connection with this claim.  2018 Opinion at *6.

Accordingly, though Count Four is adequately pled to the extent it is based on the Board's improper use of hearsay, it is nonetheless barred by the Board's immunities.

### ii.  *Application to Remaining, Inviable Claims*

As discussed, the remaining claims against the Board—Counts One, Two, and the portion of Four regarding failure to take the oath of office—have not been adequately pled.  Separately, the above analysis of the Board's immunities applies with equal force, and bars these claim to the extent that they seek damages against the Board.  Each of Plaintiff's claims against the Board stems from their parole revocation decisions, and thus implicates their adjudicatory duties, meaning that absolute liability precludes the individual capacity claims.  And Eleventh Amendment immunity bars these claims to the extent they seek damages against the Board in their official capacities.

However, in connection with Counts One and Two, Plaintiff also seeks prospective injunctive relief in the form of (i) an injunction compelling the Board to respond to administrative appeals within 30 days; and (ii) an injunction precluding the Board from treating

sex offenders differently from others.  Such relief potentially implicates the *Ex Parte Young* doctrine, which holds that Eleventh Amendment immunity does not attach where a plaintiff seeks prospective relief to end an ongoing violation of federal law.  *See MCI Telecomm. Corp. v. Bell Atl. Pennsylvania*, 271 F.3d 491, 506 (3d Cir. 2001).

It is possible that Plaintiff lacks standing to assert such a claim for prospective relief.  To satisfy Article III's standing requirements for such a claim, Plaintiff "must establish a real and immediate threat that []he would again be subject to the allegedly unconstitutional" conduct. *Andrews v. Hens-Greco*, 641 F. App'x 176, 181 (3d Cir. 2016); *see also J. C. v. Ford*, 674 F. App'x 230, 232-33 (3d Cir. 2016); *Worthy v. N.J. State Parole Bd.*, 184 F. App'x 262, 265 (3d Cir. 2006).  It is not entirely apparent whether Plaintiff could make this showing—that is, Plaintiff's allegations do not make clear whether Plaintiff faces further proceedings in front of the Board, and thus may become subject to their allegedly unconstitutional practices.  However, the Commonwealth Court's September 2018 decision invalidated Plaintiff's prior parole revocation and remanded for further proceedings, and thus it appears that Plaintiff may indeed face future proceedings in front of the Board.  *McGee*, 2018 WL 4354769, at *4.

For its part, the Board does not address how Plaintiff's request for prospective injunctive relief may affect the application of its Eleventh Amendment immunity.  *See Maliandi v. Montclair State Univ.*, 845 F.3d 77, 82 (3d Cir. 2016) ("[T]the party asserting immunity . . . bears the burden of production and persuasion.") (internal quotation marks omitted).

As a result, and in light of the fact that neither Count One nor Count Two has been adequately alleged, the Court declines to resolve whether Plaintiff may pursue *Ex Parte Young* claims for prospective relief in connection with Counts One and Two.

## IV. CONCLUSION

For the reasons given, Defendants' motions to dismiss are denied with respect to Count Three—retaliation against Thomas, McLaughlin, and McLean—and granted with respect to Counts One, Two, and Four. "[A] district court considering a 12(b)(6) dismissal must permit a curative amendment unless such an amendment would be inequitable or futile." *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 861 (3d Cir. 2014). In light of the many opportunities that this Court has granted Plaintiff to amend, permitting Plaintiff yet another opportunity to refine his claims would be both inequitable to Defendants and futile. Accordingly, Counts One, Two, and Four are dismissed with prejudice. Plaintiff may proceed only with Count Three against Thomas, McLaughlin, and McLean.

An appropriate order follows.


**June 17, 2019**                                    **BY THE COURT:**


                                                     **/s/Wendy Beetlestone, J.**

                                                     _____
                                                     **WENDY BEETLESTONE, J.**